UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| | : | |
| **Ronald William Kipps,** | : | Case No. 5:19-01662-MJC |
| | : | |
| Debtor. | : | |

# O P I N I O N

## I. INTRODUCTION

Before the Court are several matters in a battle between former spouses that started as a state court divorce action in 2012 and now has continued in this Court since the filing of the debtor Ronald William Kipps' ("Debtor") bankruptcy case in 2019. To the extent this Court is able, this Opinion is meant to be the final chapter in the bankruptcy phase of this domestic-financial dispute. Pending before this Court are: (1) the Debtor's Fifth Amended Chapter 13 Plan and the objections filed by the Chapter 13 Trustee and creditor Margaret Stinavage-Kipps; (2) the Debtor's Objection to Claim No. 5 of Margaret Stinavage-Kipps; and (3) Ms. Stinavage-Kipps' Motion for Relief from Automatic Stay.

For the reasons set forth below, the Court concludes that (i) the Debtor has not satisfied his burden to show that cause exists to approve a plan that provides for payments over a period that is longer than 3 years pursuant to 11 U.S.C. §1322(d)(2) and confirmation is denied; (ii) the Objection to Ms. Stinavage-Kipps' claim is overruled; and (iii) Ms. Stinavage-Kipps is granted relief in order to finish her divorce case in the State Court.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Reference of the U.S. District Court for the Middle District of Pennsylvania dated March 11, 2016. The matters before the Court are core proceedings pursuant to 28 U.S.C. §157(b)(2)(B), (G), and (L). Venue is proper pursuant to 28 U.S.C. §1409(a).

## III. FACTS

This Court's Opinion dated March 31, 2022 granting summary judgment to Ms. Stinavage-Kipps in the Adversary Action set forth in detail the underlying facts of the case, and as such, those facts shall not be repeated here and are incorporated herein. The facts relevant and specific to the many plans filed by the Debtor and the objections filed thereto, the objection to Ms. Stinavage-Kipps' Claim and her Motion for Relief shall be discussed.

### A. State Court Divorce Proceedings

At the time of the bankruptcy filing, the Debtor and Ms. Stinavage-Kipps were parties to a pending divorce action that was commenced in 2012 in the Pennsylvania Court of Common Pleas, Susquehanna County ("State Court") captioned Margaret Stinavage-Kipps v. Ronald W. Kipps, No. 2012-2213-CP ("State Court Action"). The Debtor filed his Chapter 13 case to stop collection and contempt proceedings pending in the State Court Action.

On March 10, 2017, the Court of Common Pleas of Susquehanna County, Pennsylvania ("State Court") entered an order ("2017 Equitable Distribution Order") overruling and sustaining certain objections of both the Debtor and Ms. Stinavage-Kipps to a November 15, 2016 Report and Recommendations submitted by the Divorce Master regarding the equitable distribution of

assets in the divorce proceeding. See 2017 Equitable Distribution Order; Adv. Dkt. # 82-1.[1] The 2017 Equitable Distribution Order directed that the Debtor, inter alia, convey the jointly owned real property "held [in] New York State" and the 9.53 acres located in Clifford Township, Pennsylvania (collectively, "Property") and make an "equalization payment" to Ms. Stinavage-Kipps in the amount of $419,871.09 within 90 days of the date of the Order. The Debtor unsuccessfully appealed the 2017 Equitable Distribution Order to the Pennsylvania Superior Court and the Pennsylvania Supreme Court. See Amended Answer, Ex. C; Adv. Dkt. # 52.

Prior to the bankruptcy filing, Ms. Stinavage-Kipps sought to collect on her State Court award. On January 30, 2019, the State Court issued an order freezing all Debtor's bank accounts up to an amount of $80,000.00 and scheduled a hearing for May 3, 2019 on Ms. Stinavage-Kipps' Emergency Petition For Special Relief. See Adv. Dkt. # 82-2. By letter dated April 22, 2019, the Debtor notified Ms. Stinavage-Kipps' State Court attorney that the Debtor had filed bankruptcy. Adv. Dkt. # 85-1, ¶1, Ex. H. The State Court, post-petition, held the contempt hearing and ordered the Debtor to convey the Property required by the 2017 Equitable Distribution Order.[2] The State Court found that, based on its concurrent jurisdiction with federal bankruptcy courts over determinations regarding the applicability of §362, the automatic stay did not apply to ministerial acts, including the execution of deeds necessary to effectuate the transfer of the marital property

---

[1] Docket entries in the main bankruptcy case are noted as "Dkt." and docket entries from the Adversary Action referred to below shall be referred to as "Adv. Dkt."

[2] The deeds were recorded in June 2019 pursuant to the State Court's Order dated May 3, 2019 and were executed by the Susquehanna County Prothonotary because the Debtor failed to execute them. See Adv. Dkt. # 82-3.

3

awarded pursuant to the 2017 Equitable Distribution Order. See May 3, 2019 State Court Order, n. 1. (Adv. Dkt. # 82-3).[3]

### B. The Bankruptcy Case

### 1. The Petition and Schedules

On April 22, 2019, the Debtor filed his Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code. On June 14, 2019, the Debtor filed his Schedules. Dkt. # 28. On his Schedule A/B: Property, Debtor lists several parcels of real property having a value of $1,659,300.00 and miscellaneous personal property totaling $89,817.29 for total assets of $1,749,117.29. The liabilities listed on Schedule E/F are his former spouse, Margaret Stinavage-Kipps[4], in the amount of $419,871.09 and other creditors totaling $85,222.60 for total liabilities of $505,093.69.[5] Based upon his Schedules, the Debtor has a total positive net worth of $1,234,923.60.

On Schedule I, Debtor indicates that he is a "Retired-Farmer" and his sole income is $770.00 from social security benefits and $497.00 from a "Trust Fund" for a total monthly income of $1,267.00. On Schedule J, Debtor lists $4,759.83 in monthly expenses for a net monthly loss of $3,492.83.

---

[3] At another hearing before the State Court and after this Court (Judge Opel) determined that State Court criminal contempt proceedings were excepted from the automatic stay pursuant to §362(b)(1), Adv. Dkt. # 12, the State Court subsequently found the Debtor guilty of criminal contempt.

[4] The Debtor misspelled Ms. Stinavage-Kipps' surname on his Schedules as Stincavage.

[5] In this Court's prior Order Denying Motion For Reconsideration, Adv. Dkt. # 102, n. 1, the Court noted that the Debtor sought bankruptcy protection and has continued this case despite having only approximately $5,000.00 in general unsecured claims filed. His ex-spouse is the only substantial creditor holding a claim against the Debtor in the amount of $447,964.26. Further, in the divorce action and in connection with the equitable distribution of assets in 2017, the State Court indicated that the Debtor would be retaining approximately $2,000,000 of cash and assets from the divorce. This calls into question whether the bankruptcy filing on the eve of a State Court contempt proceeding was to protect the Debtor against his creditors and obtain a "fresh start" or was it a litigation tactic to avoid payment under the 2017 Equitable Distribution Order?

## 2. The Filed Proofs of Claim

The Bar Date for filing claims in this case was set for July 1, 2019. On July 1, 2019, Ms. Stinavage-Kipps timely filed Proof of Claim No. 5 ("Claim") in the amount of $447,964.28 based upon the 2017 Equitable Distribution Order. The Claim is comprised of the equalization payment of $419,871.09 plus interest of $28,093.19. Ms. Stinavage-Kipps asserts her Claim is secured by the Clifford Township Property. The 2017 Equitable Distribution Order also provided that if the Debtor failed to pay, the Defendant would be entitled to a first priority mortgage lien against 186.65 acres in Clifford Township and 3.18% per annum interest payable over a 10-year period.

On March 22, 2021, over 1 ½ years after the Claim was filed, the Debtor filed his Objection to the Claim.[6] Dkt. #105. The Debtor's Objection seeks to (1) reclassify the Claim from a secured status to unsecured; (2) reduce the claim due to the alleged violations of the stay as set forth in the Adversary Action; and (3) essentially re-litigate the amount of the Claim due to offsets from the alleged damages and increase in value of the underlying assets. Ms. Stinavage-Kipps filed a response to the Objection on April 22, 2021. Dkt. # 110.

In addition to the Claim, four (4) other creditors filed claims by the Bar Date totaling only $5,343.42. Accordingly, Ms. Stinavage-Kipps' Claim comprises 98.82% of the timely filed claims.

## 3. The Debtor's Chapter 13 plans

On June 20, 2019, almost 2 months after filing his bankruptcy case, the Debtor filed his original Chapter 13 Plan. Dkt. # 37. Despite having over $1,000,000.00 in net assets per his filed Schedules, the plan provided for "unknown" payments to creditors or was blank, the start and end

---

[6] The Court did not find any explanation for such a delay by the Debtor in filing an objection to the Claim. However, it would appear to be just a part of the continuing tactic to simply delay and frustrate Ms. Stinavage-Kipps' efforts to collect on her 2017 divorce award.

5

dates for payments were blank, and the payment source was to be through the liquidation of unidentified property in a blank amount.[7] Not surprisingly, on November 5, 2019, the Chapter 13 Trustee filed an Objection to the Plan. Dkt. # 60.[8] Later, on December 13, 2019, Ms. Stinavage-Kipps also filed an objection to the plan. Dkt. # 65. Subsequent to these objections, the Debtor filed the following amended plans:

    12/18/19 – First Amended Plan (Dkt. # 66)

    4/22/20 – Second Amended Plan (Dkt. # 89)

    9/11/20 – Third Amended Plan (Dkt. # 93)

    1/21/22 – Fourth Amended Plan (Dkt. # 126)

    2/8/22 – Fifth Amended Plan (Dkt. # 131) (referred to hereafter as the "Amended Plan")

The Debtor's Amended Plan provides for a base plan of $6,750.00 in payments comprising of $100.00 per month for the first 36 months, and then stepped up to $125.00 per month for months 37 to 48, and $150.00 per month for months 49 to 60, and then on October 1, 2025 an "unknown" amount paid from litigation proceeds. The Attachment to the Amended Plan also provides for the sale of "unnecessary livestock as determined by the Debtor", "unnecessary farm equipment; [sic] as determined by the Debtor;" and the sale of the New York property with "such liquidation to occur within one year following confirmation, as may be necessary to fully fund the Plan", see Amended Plan Attachment at A.2.D.

Each of the Debtor's plans were met with objections by the Trustee and Ms. Stinavage-Kipps. The prior objections all raised similar issues including the Debtor's insufficient monthly

---

[7] The Plan at Section 1.B.5.1. actually was not blank, it indicated "$Enter text here." Obviously, the Debtor failed to properly complete the Plan.

[8] The delay in filing the objection by the Trustee was caused by the case being dismissed on September 5, 2019 because of the Debtor's failure to attend the § 341 meeting of creditors.

6

net income and ambiguous terms regarding the funding of the plan and sale of assets. The last of these objections to the Amended Plan filed by the Trustee, Dkt. #134, and Ms. Stinavage-Kipps, Dkt. # 137, assert that, <u>inter alia</u>, the Amended Plan is not confirmable because the Debtor is a "below median income debtor," and that a below median income debtor cannot obtain a confirmed plan that proposes payments for longer than thirty-six months unless the Court finds "cause" to approve a longer period pursuant to 11 U.S.C. §1322(d)(2). Despite the clear language of §1322(d)(2), the Debtor never requested that the Court find "cause" to approve his plan extending beyond 36 months.

### 4. Motion for Relief from Automatic Stay

On October 30, 2019, Ms. Stinavage-Kipps filed a Motion for Relief from Automatic Stay ("Motion for Relief"). Dkt. # 56. The Motion for Relief seeks to allow Ms. Stinavage-Kipps the right to pursue her state court rights to enforce the 2017 Equitable Distribution Order. The Debtor filed his Answer on November 12, 2019. Dkt. # 61.

The Claim and the Motion were consolidated for hearing. On May 12, 2022, an evidentiary hearing was held, and the only witness was an appraiser on behalf of the Debtor. Post hearing briefs were submitted by the parties.

### C. The Adversary Action

On May 24, 2019, the Debtor filed an adversary proceeding, which was docketed at A19-00064-MJC, against Ms. Stinavage-Kipps for alleged violations of the automatic stay for refusing to release bank accounts that were frozen pre-petition and for her post-petition participation in the State Court Action relating to the conveyance of former marital property and contempt proceedings ("Adversary Action"). Adv. Dkt. # 1.[9] The Debtor sought damages in excess of $25,000.00,

---

[9] An amended complaint was filed on October 15, 2020. Adv. Dkt. # 47.

reimbursement of counsel fees, and injunctive relief. On June 14, 2019, Ms. Stinavage-Kipps filed an Answer and Request for Sanctions and Relief from Automatic Stay. Adv. Dkt. # 9.

After extended pre-trial sparring between the parties, on July 1, 2021, Ms. Stinavage-Kipps filed a motion for summary judgment ("MSJ"). Adv. Dkt. # 71. The parties fully briefed and argued the issues raised in the MSJ. The Court, by its Opinion and Order dated March 31, 2022. Adv. Dkt. #'s 89, 90, granted Summary Judgment in favor of Ms. Stinavage-Kipps.[10]

## IV. LEGAL ANALYSIS

### A. Plan Confirmation

#### 1. Legal Standard - Confirmation Issues

Section 1325(a) governs confirmation of a Chapter 13 Plan, setting out specific requirements in order for a plan to be confirmed.

> To achieve confirmation, the court must find that the chapter 13 plan: was proposed in good faith; complies with the Code; is feasible; and provides certain baseline treatment for secured and unsecured creditors. Additionally, the Debtor must: have commenced the case in good faith, have paid any outstanding filing fees, have filed all tax returns required by section 1308; and be current on any postpetition domestic support obligations.

In re Roebuck, 618 B.R. 730, 732 (Bankr. W.D. Pa. 2020) (footnotes omitted). A party objecting to confirmation of the plan bears the initial burden to come forward with evidence in support of the objection. In re Lafferty, 2019 WL 10431875, at *3 (Bankr. M.D. Pa. 2019); In re Plevyak,

---

[10] The Court denied Debtor's request for reconsideration by Order dated June 6, 2022, Adv. Dkt. # 102, and the Debtor filed a Notice of Appeal on June 7, 2022. The Appeal is pending in the District Court at Civil Action No. 3:22-cv-898-MEM.

599 B.R. 786, 788 (Bankr. M.D. Pa. 2019). If that burden is met, then the burden shifts to the debtor. As the proponent of the plan, the debtor holds the ultimate burden of proof based upon a preponderance of the evidence to establish that the plan meets all of the §1325(a) requirements. Id.

### 2. Legal Standard – Cause to Extend Plan Term under §1322(d)

Pursuant to §1322(d)(2),[11] a below median debtor may not propose a plan that provides "for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years." "'Cause' for extending a plan beyond three years is not defined in the Code." In re Humes, 2013 WL 6536947, at *2 (Bankr. M.D. Pa. 2013); accord In re Fries, 68 B.R. 676, 679 (Bankr. E.D. Pa. 1986). Caselaw on this issue has developed such that certain generalizations can be made. For instance, some courts have allowed an extension for cause when a debtor requires more than 3 years to pay either

---

[11] The limitation on the commitment period for below median income debtors was introduced in 2005 under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Section §1322(d)(2) provides:

> (2) If the current monthly income of the debtor and debtor's spouse combined, when multiplied by 12 is less than –
>
>> (A) in the case of a debtor in a household of 1 person, the median income of the applicable State for 1 earner;
>>
>> (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>>
>> (C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $825 [originally "525", adjusted effective April 1, 2022] per month for each individual in excess of 4,
>
> the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years.

priority or secured claims.  E.g., In re Flinn, 615 B.R. 313, 324 (Bankr. D. Kan. 2020); Fries, 68 B.R. at 679; In re Chapman, 135 B.R. 11, 14 (Bankr. M.D. Pa. 1990).  Another compelling ground where certain courts have found that cause exists is when a debtor voluntarily seeks to extend the plan in order to pay a substantially increased dividend to unsecured creditors.  E.g., In re Scott, 488 B.R. 246, 258 (Bankr. M.D. Ga. 2013); In re Stein, 18 B.R. 768, 769 (Bankr. S.D. Ohio 1982); but see In re Festa, 65 B.R. 85, 87 (Bankr. S.D. Ohio 1986) ("debtor's desire to increase the dividend paid to his general unsecured creditors, without more, does not rise to the required level for exceeding the prescribed 36 month period." (citing cases)).

To the contrary, courts have declined to find cause where a proposed plan extended the three year period without the approval of the Bankruptcy Court, see In re Andrews, 155 B.R. 769, 773 (B.A.P. 9th Cir. 1993), aff'd, 49 F.3d 1404 (9th Cir. 1995), or where the extension would allow a debtor to delay payments to unsecured creditors, see In re Lindsey, 122 B.R. 157, 159 (Bankr. M.D. Fla. 1991) and In re Santa Maria, 128 B.R. 32, 35 (Bankr. N.D.N.Y. 1991).

As Judge France opined in Humes, "courts should adopt a flexible approach to the cause requirement and permit the extension of a plan beyond three years when the extension is justified by the circumstances and is necessary for the debtor to obtain effective relief under Chapter 13." 2013 WL 6536947 at *2.  This Court will follow Judge France's guidance and apply a flexible approach to determine if cause exists here.

### 3. The Parties' Arguments

The Trustee filed his objection to the Amended Plan arguing, inter alia, that the Amended Plan is not feasible because funding relies mostly on litigation proceeds, was not proposed in good faith because the Debtor has sufficient assets that could be liquidated, and is not confirmable

10

Case 5:19-bk-01662-MJC    Doc 160    Filed 09/30/22    Entered 09/30/22 17:02:42    Desc
Main Document    Page 10 of 19

because the Debtor is a "below median," and as such, cannot obtain a confirmed plan that proposes payments for longer than thirty-six months unless the Court finds "cause" to approve a longer period pursuant to §1322(d)(2). Ms. Stinavage-Kipps joined in the Trustee's objection, echoing the Trustee's concerns regarding good faith[12] and feasibility and also, highlighting the fact that the Debtor did not prevail in the Adversary Action against Mr. Stinavage-Kipps – which was the main source of funding for the Amended Plan.

Although never requesting that the Court extend the Amended Plan term beyond the statutorily prescribed three years based upon a finding of cause, the Debtor nonetheless now suggests that cause exists because the Amended Plan calls for payment in full to all creditors and consideration of the Debtor's various proposed plans was delayed due to COVID-19 restrictions and changes in Bankruptcy Judges assigned to this case. The Debtor further argues that the Amended Plan was proposed in good faith as a means to pay creditors; however, the delays in the case were beyond the Debtor's control.

The parties presented no evidence on the confirmation issues and seek to rely on the case docket, the legal briefs, and argument at the confirmation hearing.[13]

---

[12] Because the Court finds that the Debtor has not established cause to extend the plan term beyond 36 months, the Court will not reach the issue of good faith.

[13] A bankruptcy judge may take judicial notice of his or her own docket. In re Harmony Holdings, LLC, 393 B.R. 409, 413 (Bankr. D.S.C. 2008); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991). The Court takes judicial notice of the docket entries in the Debtor's Chapter 13 case, as well as the contents of the schedules and statements which are not reasonably subject to dispute.

## 4. Discussion

The Debtor does not dispute that he is a "below median income" debtor.[14] Accordingly, he is required to establish cause to confirm a plan proposing in excess of 36 months of plan payments. §1322(d)(2). Here, the Debtor's Amended Plan provides for payments from November 2020 through October 2025 or 60 months. Importantly, in this case, the Debtor never appeared at his confirmation hearing and never requested that the Court find "cause" in seeking to extend the plan payment period beyond 36 months.[15]

Relevant to the evaluation of cause are the facts that prompted the Debtor to file this case. It is clear to this Court that the primary reason the Debtor filed his bankruptcy case was to either further delay or avoid collection under the 2017 Equitable Distribution Order which directed that the Debtor, inter alia, convey the Property and make an "equalization payment" to the Defendant in the amount of $419,871.09. After the Debtor unsuccessfully appealed the 2017 Equitable Distribution Order, Ms. Stinavage-Kipps commenced collection proceedings that led to contempt proceedings in the State Court divorce action. Prior to a contempt hearing, the Debtor filed his bankruptcy case and immediately invoked the automatic stay to avoid his domestic obligations.

The Debtor, however, is not a "typical" debtor. The State Court indicated that the Debtor was being given approximately $2,000,000.00 of cash and assets from the divorce and the Debtor's

---

[14] Additionally, the Debtor's Statement of Your Current Monthly Income and Calculation of Commitment Period (Official Form 122C-1) Dkt. # 32, specifies that his yearly income is $15,204.00 and the "median" income for a debtor in Pennsylvania is $55,117.00. On that Statement, the Debtor has also specifically indicated that "the commitment period is 3 years." Id. at line 21. Accordingly, the Debtor is a "below median income" debtor and has acknowledged that the plan commitment should be 3 years.

[15] The Court acknowledges that the first time the term length was raised by the Trustee (and perhaps somewhat belatedly given that all of the Debtor's proposed plans were 60 month plans) was in his Objection to the Amended Plan on February 11, 2022, Dkt. # 134. However, even though the Trustee raised the issue, Debtor's Counsel appeared at the confirmation hearing on April 26, 2022 and was not prepared to address the §1322(d)(2) issue. The Court continued the hearing to May 5, 2022 to allow him additional time to address the §1322(d)(2) issue.

Schedules indicate over $1.7 million in assets. See Dkt. # 28. Further, as a retired farmer earning $1,267.00 per month according to his Schedules, it is difficult to comprehend how the Debtor could put together a meaningful Chapter 13 plan. Instead of proposing a firm plan from the outset that would have paid his ex-spouse and other creditors within 3 years, the Debtor submitted plan after plan that was incomplete, un-confirmable and/or vague as to actual payments through liquidation of his property. See Santa Maria, 128 B.R. at 35 (finding that debtor failed to establish cause to extend plan term to 60 months where debtor's motivation for extension under then §1322(c) was to frustrate obligation to support his dependents and render them unable to enforce debtor's state court ordered obligation while debtor was earning sufficient income and retaining significant assets, value of which was sufficient to pay claims in full immediately). Furthermore, the Debtor's plans largely relied upon speculative proceeds derived from a successful outcome in his Adversary Action (which ultimately was decided in favor of Ms. Stinavage-Kipps) and purported claim litigation attacking Ms. Stinavage-Kipps' Claim again.[16]

After a review of the totality of the circumstances, it is clear to the Court that the Debtor filed his bankruptcy case solely to further delay paying his ex-spouse under the 2017 Equitable Distribution Order. The Debtor, who is admittedly a "below median income" debtor, has failed to establish cause to allow for an extension of his plan beyond 36 months. Accordingly, the Trustee's and Ms. Stinavage-Kipps' objections will be sustained and confirmation of the Amended Plan denied.

---

[16] In In re Nichols, 305 B.R. 418, 424-425 (Bankr. M.D. Pa. 2004), citing to Judge France again, she found that the filing of the Chapter 13 petition after a state court entered a property distribution order in a pending divorce did not put the property "up for grabs" again. If the Debtor believes his ex-wife's claim should be reduced, he is not restricted to seek relief from the State Court.

### B. The Debtor's Objection to Claim No. 5

### 1. Legal Standard – Objection to Proof of Claim

The standard for determining the allowance of a proof of claim was succinctly stated in In re Wells, 463 B.R. 320, 326 (Bankr. E.D. Pa. 2011):

> A proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). If properly filed, see Fed. R. Bankr.P. 3001(c), a proof of claim is prima facie evidence of the validity and amount of the claim, even if an objection is filed. See Fed. R. Bankr.P. 3001(f). In other words, "if a proof of claim complies with the Rules of Court and is self-sustaining (i.e., it sets forth the facts necessary to state a claim and is not self-contradictory), it is prima facie valid and the objecting party has the burden of producing evidence to refute the claim." In re Sacko, 394 B.R. 90, 98 (Bankr. E.D. Pa. 2008). That evidence, "if believed, [must] refute at least one of the allegations that is essential to the claim's legal sufficiency." In re Allegheny Int'l, Inc., 954 F.2d 167, 173–74 (3d Cir. 1992). If the objector meets that burden of production, the claimant must produce evidence to prove the validity of the claim, id. at 174, because "the ultimate burden of persuasion is always on the claimant," In re Holm, 931 F.2d 620, 623 (9th Cir. 1991).

With respect to the Claim, the Debtor has not questioned the prima facie validity of the proof of claim. Therefore, the Court must determine whether the Debtor has produced sufficient evidence to refute at least one of the allegations of the Claim.

### 2. The Parties' Positions

The Debtor asserts that the Claim should be (i) re-classified as unsecured;[17] (ii) disallowed in its entirety because of the alleged violation of the stay as set forth in the Adversary Action; and

---

[17] The Debtor objected to the classification of the proof of claim as secured arguing that under §544(a), unperfected security interests are avoidable and can be reclassified as a general unsecured claim. Pursuant to Fed. R. Bankr. P. 3007(b), an objection to a proof of claim may not include "a demand for relief of a kind specified in Rule 7001." Essentially, the Debtor is seeking a lien avoidance action under §544, which must be pursued via an adversary proceeding. See Fed. R. Bankr. P. 7001(2) ("a proceeding to determine the validity, priority, or extent of a lien or other interest in property" requires filing of adversary complaint).

(iii) the amount of the Claim should be reduced because the interest charge is not allowed and to account for offsets due to increase in value of the Property. The Debtor argues that the value of the Property awarded by the State Court in 2017 should be re-valued as of the date the subject deeds to the Property were recorded in 2019. This delay from 2017 to 2019 was caused as a result of the Debtor appealing the award to the Superior and Supreme Courts of Pennsylvania, refusing to execute the subject deeds, and then filing this bankruptcy case. It is difficult for the Court to understand how the Debtor should be able to be rewarded for the delays associated with his unsuccessful appeals and suspect bankruptcy filing. It is also difficult to understand how this Court could "re-value" just the selected parcels of real estate awarded to Ms. Stinavage-Kipps without opening the entire State Court divorce file and consider all the assets and liabilities based upon actual transfer dates. It would seem an untenable task for any court to keep track of such elusive dates of transfer and ever-changing values.[18] The State Court entered judgment on the equitable distribution claims after recommendations by a Master and after a complete review of the parties' assets and liabilities. See Adv. Dkt. # 16-4 (State Court's 34-page Opinion supporting the 2017 Equitable Distribution Order).

The Debtor would like this Court to separate the "date of distribution" from the date of the valuation made by the State Court. However, the Debtor did not provide any supporting legal authority where a state court had changed the value of an equitable distribution award properly determined by the court due to a delay caused by that spouse. Nor did the Debtor provide any

---

Because of the procedural defect, the Court will not rule on the Debtor's request for reclassification. Further, in light of the Court's ruling on the objections to confirmation, the secured status of the Claim is irrelevant.

[18] For example, there was reference in the pleadings that the Debtor received $80,000.00 in connection with the lease of the subject Property without approval from Ms. Stinavage-Kipps and without disclosing this income in his Schedules. See In re Kipps, 2022 WL 997795, at *6, n.7 (Bankr. M.D. Pa. 2022).

15

authority where a bankruptcy court changed the value of a final state court equitable distribution award.

The Debtor, however, primarily relies upon the Pennsylvania Supreme Court decision in Sutliff v. Sutliff, 518 Pa. 378 (1988) to support his position that the "date of distribution" should be the date the deeds were recorded. The facts of Sutliff are not on point. In Sutliff, the Supreme Court remanded the case because the trial court relied on the date the Sutliffs separated rather than a date closer to the actual award. Although the Sutliff Court concluded that the trial court should not use "stale" data that was over 3 years old in setting the valuation on the date of separation, the Sutliff Court did not mention anywhere that the values once properly set for equitable distribution should be or could be re-set further after a proper distribution order was entered.

Further, Justice McDermott, in his concurring opinion in Sutliff, stated:

> I join in the opinion of Mr. Justice Flaherty. However, I write separately to emphasize that the distribution date is the date the common pleas court enters an order of distribution, and that the disposition date of post-trial motions or appeals does not affect the use of that original date as the valuation point. Therefore, a litigant cannot contest the relative value of assets on the grounds that they substantially changed while the case was being further litigated.

Id. at 388. Justice McDermott's Concurrence is directly on point to the case sub judice.

In Miller v. Miller, 617 A.2d 375 (Pa. Super. 1992), a case described as an "unduly protracted litigation over the distribution of marital property after a divorce" is similar factually to the case before this Court. Id. at 376. After the husband's second appeal, the Pennsylvania Superior Court recognized that the significant passage of time due to appeals since the trial court entered its order for distribution had significantly decreased the husband's pension value. The Husband believed the valuation should be relitigated. The Superior Court, in relying upon Sutliff, found otherwise holding "[t]he passage of time under these circumstances does not mandate that

16

a new valuation be made." Id. at 379. The Miller Court disagreed with the husband's position that each time he filed a Notice of Appeal he should be rewarded with "a re-litigation of every issue in the case." Id. at 379 n.9. Citing Sutliff, the Superior Court found "[a]lthough it is important that a valuation be as current as possible, and that relevant changed circumstance be considered, the process must end somewhere." Miller, 617 A.2d at 379, n.9 (citing Sutliff, 543 A.2d at 539). It is clear that the process ends as of the date of a properly entered distribution order by the State Court.

Given that bankruptcy courts traditionally defer to state courts when considering family law issues (see In re Lemoine, 2012 WL 5906939, at *3 (Bankr. E.D. Pa. 2012)), and the fact that there does not appear to be any authority for this Court to alter a fully litigated State Court equitable distribution award, the Debtor's Objection to Ms. Stinavage-Kipps' Claim is overruled.

### C. Ms. Stinavage-Kipps is Entitled to Relief From the Stay

Generally, upon the filing of a bankruptcy petition, the protections of §362(a) are triggered and operate as an automatic stay against certain actions. Section 362(d) affords creditors the opportunity to seek relief from the stay once certain grounds are established.

Section 362(d) provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if--
> > > (A) the debtor does not have an equity in such property; and
> > > (B) such property is not necessary to an effective reorganization....

A party seeking relief under §362(d) bears the burden of proof on the issue of equity in the property; the debtor bears the burden of proof on all other issues. In re Kane, 27 B.R. 902 (Bankr. M.D. Pa. 1983).

The Court's determination of Ms. Stinavage-Kipps' Motion for Relief requires little discussion. Given the Debtor's pre-petition actions in subverting Ms. Stinavage-Kipps' ability to enforce the 2017 Equitable Distribution Order, his failure to comply with the Order since its entry, and his inability to propose a confirmable plan, the Court finds that Ms. Stinavage-Kipps has established "cause" under §362(d)(1). Accordingly, Ms. Stinavage-Kipps shall be granted relief from the §362(a) stay in order to exercise her non-bankruptcy law rights relating to the collection of the 2017 Equitable Distribution Order.

## V. CONCLUSION

Here, after a series of six (6) proposed plans and corresponding objections to each of the plans by the Trustee and Ms. Stinavage-Kipps, it would be futile to allow the Debtor to file another amended plan.[19] A bankruptcy judge should always strive to permit an honest but unfortunate debtor a fair opportunity to reorganize and to obtain a discharge of his or her personal obligations. From the record before the Court, the Debtor, having approximately $2 million in assets and little debt other than his marital obligation, does not appear to be making an honest effort to pay his creditors (specifically his ex-spouse). The Debtor has avoided paying his ex-spouse since the entry

---

[19] Chapter 13 does not provide a debtor with an unlimited number of opportunities to file a confirmable plan. When the filing of an amended plan would be futile, courts recognize that the case may be dismissed. See In re Schafer, 2009 WL 2913439, at *3 (Bankr. E.D. Pa. 2009); In re Orawsky, 387 B.R. 128, 137 (Bankr. E.D. Pa. 2008) ("[t]here are cases in which a debtor's failure to propose a confirmable plan and the attendant delay justify dismissal of the case."). Here, since the Debtor is past the 36-month repayment period, any amended plan would be futile.

of the 2017 Equitable Distribution Order and the filing of the divorce action in 2012. It is time to end this chapter in the Kipps/Stinavage-Kipps divorce battle.

Accordingly, for the reasons stated above, the Court (i) sustains the Objections to the Debtor's Amended Plan filed by the Trustee and Ms. Stinavage-Kipps (ii) denies confirmation of the Amended Plan; (iii) overrules the Debtor's Objection to Ms. Stinavage-Kipps' Claim; (iv) grants Ms. Stinavage-Kipps relief from the automatic stay; and (v) shall schedule a hearing to determine if the Debtor desires to have his case dismissed or converted to one under Chapter 7.

An appropriate order will be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: September 30, 2022